Eric Henkel, Esq.
COTNER LAW, PLLC
2700 Radio Way
Missoula, Montana 59808-6960
Tel:   (406) 541-1111
Fax:   (406) 541-1122
Email: ehenkel@cotnerlaw.com

*Attorneys for Defendant Newhoff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>WILLIAM DALE NEWHOFF,<br><br>Defendant. | CR 18-23-M-DLC<br><br>**DEFENDANT WILLIAM NEWHOFF'S SENTENCING MEMORANDUM** |

COMES NOW, Defendant William Dale Newhoff ("Mr. Newhoff"), by and through his counsel of record, and respectfully submits this Sentencing Memorandum in anticipation of his sentencing hearing scheduled for November 16, 2018.

## I. Introduction

Pursuant to a written Plea Agreement, Mr. Newhoff pled guilty on August 7, 2018, to unlawfully possessing a firearm in violation of 18 U.S.C. § 922 (g)(1). The offense carries a maximum punishment of 10 years imprisonment, a $250,000 fine, three years of supervised release, and a $100 special assessment. At the time of sentencing, if the Court is inclined to accept the Plea Agreement, the United States will move to dismiss Count II of the Indictment.

The Presentence Investigation Report ("PSR") determined Mr. Newhoff's base offense level to be 14. The PSR then increased the base offense level by 4 levels because the offense of conviction involved a firearm with an obliterated serial number. The PSR also applied a 2-level enhancement under § 3C1.2 for Reckless Endangerment During Flight and a 3-level reduction for Acceptance of Responsibility under § 3E1.1. After applying these enhancements and adjustments, the PSR determined Mr. Newhoff's total offense level to be 17, with a criminal history category of V. PSR ¶¶ 33 and 71. Based on a total offense level of 17 and a criminal history category of V, the PSR determined that Mr. Newhoff's recommended guideline range of imprisonment is 46-57 months.

There is one objection to be resolved at sentencing. Mr. Newhoff objects to the PSR's application of a 2-level enhancement under § 3C1.2 for Reckless

Endangerment During Flight. If this objection is sustained, Mr. Newhoff's total offense level would be 15. With a total offense level of 15 and a criminal history category of V, Mr. Newhoff's recommended guideline range would be 37-46 months.

For the reasons set forth below, Mr. Newhoff respectfully requests the Court to impose a sentence of <u>46 months</u> in prison, followed by <u>three years</u> of supervised release, <u>no fine</u>, and <u>no restitution</u>. In addition, pursuant to § 5G1.3(c), Mr. Newhoff respectfully requests that his sentence for the instant offense be imposed to run concurrently with his anticipated state sentence(s) in Cause Nos. DC 18-104 and DC-01-335 in the Montana Fourth Judicial District Court. Mr. Newhoff submits that under the factors set forth in § 3553(a), the requested sentence satisfies the statutory requirement that sentences be "sufficient, but not greater than necessary."

## II. PSR Objection

### A. There is No Nexus Between the Crime of Conviction and the Alleged Reckless Endangerment as Required for a 2-Level Enhancement under USSG § 3C1.2

Mr. Newhoff objects to paragraphs 21 and 28 of the PSR. More specifically, Mr. Newhoff objects to the application of a 2-level enhancement under U.S.S.G. § 3C1.2 for Reckless Endangerment During Flight. Consequently, Mr. Newhoff

objects to the total offense level set forth in paragraph 33 and the recommended guideline range of imprisonment set forth in paragraph 101. If this objection is sustained, Mr. Newhoff's total offense level would be 15 and his recommended guideline range would be 37-46 months.

Section 3C1.2 provides for a 2-level enhancement "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." The government bears the burden of proving factors enhancing a sentence by a preponderance of the evidence. *United States v. Young*, 33 F.3d 31, 32 (9th Cir. 1994) (citation omitted).

The Ninth Circuit has assumed, without holding, that an enhancement under § 3C1.2 requires "a nexus between the crime of conviction and the reckless endangerment." *United States v. Duran*, 37 F.3d 557, 560 (9th Cir. 1994), overruled on other grounds by *Tapia v. United States*, 131 S. Ct. 2382, 180 L. Ed. 2d 357 (2011). The Ninth Circuit's assumption is consistent with the general spirit of the Guidelines, which require all Chapter 3 enhancements to bear a nexus to the specific offense of conviction. *See* U.S.S.G. § 1B1.3 (making clear that adjustments in Chapter 3 must be determined on the basis of acts related to the "offense of conviction"). In addition, the Ninth Circuit's assumption is consistent with holdings in other Circuits, including the Fifth and Sixth Circuits, both of

which have expressly held that § 3C1.2 requires a nexus between the offense of conviction and the reckless endangerment during flight. *See United States v. Southerland*, 405 F.3d 263, 267 (5th Cir. 2005); *United States v. Dial*, 524 F.3d 783, 787 (6th Cir. 2008).

According to the Ninth Circuit, "[a] sufficient nexus exists to warrant enhancement under U.S.S.G. § 3C1.2 if a **_substantial cause_** for the defendant's reckless escape attempt was to avoid detection for the crime of conviction." *Id.* (emphasis added). In applying this nexus test, the Ninth Circuit looks "to the state of mind of the defendant when he recklessly attempted to avoid capture, not to why the police were pursuing him." *Id.* Although the factors of geographic and temporal proximity may provide some indication of causation, these factors are "not controlling determinates," according to the Ninth Circuit. *Id.* Instead, the primary determinate is the defendant's state of mind, "particularly when the defendant's state of mind is established." *Id.*

In *Duran*, the Ninth Circuit determined that the nexus test had been satisfied because the defendant, who was convicted of bank robbery, made statements that clearly established his state of mind and reason for attempting to avoid capture. Specifically, while in the process of fleeing from law enforcement, the defendant had stated to a witness that he was "running from the law" because he "had stolen

[a vehicle] in Oregon City and had also robbed a bank." *Id.* at 559. Because the record demonstrated that "one of the reasons [the defendant] initiated the dangerous car chase was the bank robbery," the *Duran* Court concluded that there was a sufficient nexus between the bank robbery and the car chase. *Id.* at 560.

In this case, there is no nexus between the crime of conviction and the alleged reckless endangerment. The government cannot demonstrate that Mr. Newhoff was motivated by a desire to avoid capture for unlawfully possessing a firearm, and it certainly cannot demonstrate that such a desire was a "substantial cause" of Mr. Newhoff's escape attempt. Although the government may argue that Mr. Newhoff's unlawful possession of a firearm was geographically and temporally proximate to his escape attempt, these factors are not the controlling determinates because Mr. Newhoff's state of mind is established in the record. Specifically, the record demonstrates that Mr. Newhoff's motivation for fleeing was based on his belief that he was wanted for allegedly failing drug tests and failing to report to his probation officer in violation of his supervised release conditions in Cause No. CR 08-41-DWM-M. In fact, these alleged violations were the basis for an arrest warrant issued by this Court in December of 2017 and on the day of his eventual arrest in January of 2018, Mr. Newhoff stated that he fled from authorities because he observed a law enforcement officer outside of his motel

room and thought the officer was his United States Probation Officer from Billings. *See* Docs. 90 and 91 in Cause No. CR 08-41-DWM-M; *see also* PSR ¶ 15 ("Newhoff revealed he fled from authorities after seeing law enforcement, which he believed to be his United States Probation Officer from Billings, looking at his truck in the parking lot of the motel.").

In sum, the government cannot establish that Mr. Newhoff's unlawful possession of a firearm was a "substantial cause" of his escape attempt because the record establishes that Mr. Newhoff's desire to avoid capture was based on his belief that he was wanted for allegedly failing drug tests and failing to report to his probation officer in violation of his supervised release conditions in Cause No. CR 08-41-DWM-M. For this reason, the Court should not apply a 2-level enhancement under § 3C1.2.

### III. Sentencing Memorandum

Courts have broad discretion to consider every aspect of each case and each defendant when fashioning an appropriate sentence. This principle was recently affirmed in *Pepper v. United States*, 562 U.S. ___, 131 S.Ct. 1229 (2011), where the United States Supreme Court emphasized that Congress "could not have been clearer" in drafting 18 U.S.C. § 3661, which directs that " '[n]o limitation … be placed on the information concerning the background, character, and conduct' of a

defendant that a district court may 'receive and consider for the purpose of imposing an appropriate sentence.' " *Pepper,* 562 U.S. at ___, 131 S.Ct. at 1241 (quoting 18 U.S.C. § 3661).

A. **Pursuant to U.S.S.G. § 5G1.3(c), Mr. Newhoff's Sentence for the Instant Offense Should Be Imposed to Run Concurrently with Mr. Newhoff's Anticipated State Sentence(s) in Cause Nos. DC 18-104 and DC-01-335 in the Montana Fourth Judicial District Court.**

In paragraphs 74 and 64, the PSR indicates that Mr. Newhoff is facing state criminal charges in Missoula County for conduct that is relevant conduct to the instant offense of conviction. Although those state charges are still pending, the Court should order the sentence for the instant offense to run concurrently with Mr. Newhoff's anticipated state sentence(s) in Cause Nos. DC 18-104 and DC-01-335 in the Montana Fourth Judicial District Court.

Pursuant to U.S.S.G. § 5G1.3(c), when a state sentence is anticipated to result from another offense that is relevant conduct to the instant offense of conviction, "the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment."

Here, the PSR makes clear that Mr. Newhoff's pending charges in Missoula County Cause Nos. DC 18-104 and DC-01-335 are based upon conduct that is relevant conduct to the instant offense of conviction. *See* PSR ¶ 74 ("The defendant's actions involved in this case are documented in the offense conduct

section of this report"); *see also* PSR ¶ 64 ("A new Petition to Revoke has been filed by the County Attorney's Office in Missoula, [sic] regarding the defendant's criminal conduct in the instant offense").

Under these circumstances, § 5G1.3(c) mandates that Mr. Newhoff's sentence for the instant offense be imposed to run concurrently to his anticipated sentence(s) in Cause Nos. DC 18-104 and DC-01-335 in the Montana Fourth Judicial District Court.

B.  **A Careful Consideration of the Factors Enumerated in 18 U.S.C. § 3553(a) Supports Mr. Newhoff's Proposed Sentence.**

"While the Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence." *United States v. Autery,* 555 F.3d 864, 872 (9th Cir. 2009) (quoting *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008)). "[T]he Guidelines factor [may not] be given more or less weight than any other." *Id.* "So while the Guidelines are the 'starting point and initial benchmark' and must 'be kept in mind throughout the [sentencing] process,' the Guidelines range constitutes only a touch-stone in the district court's sentencing considerations." *Id.* District courts "must consider both the seven § 3553(a) factors and the Guidelines when imposing [a] sentence." *Id.* "[S]entences outside the Guidelines are subject to the

same standard—i.e., abuse of discretion—as those within the Guidelines." *Id.* (citing *Gall v. United States*, 552 U.S. 38, 49 (2007)).

The primary directive in § 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2". 18 U.S.C. § 3553(a). Section 3553(a)(2) states that such purposes are:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*Id.* at § 3553(a)(2)(A)-(D). Section 3553(a) further directs sentencing courts to consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (4) the need to provide restitution to any victims of the offense. *Id.* at § 3553(a)(1), (3), and (6)-(7).

In the present case, Mr. Newhoff respectfully submits that the following facts and circumstances should be considered when determining what type and

length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

     Mr. Newhoff was born in 1982 in Missoula, Montana, to William Newhoff, Sr., and Doris Newhoff. Mr. Newhoff lived in Missoula all his life with the exception of long periods of incarceration at both juvenile and adult facilities. When Mr. Newhoff was three years old, his father died of an infection, leaving Doris to raise Mr. Newhoff alone. From that point forward, the only constant in Mr. Newhoff's life was instability. Doris married multiple times and had various relationships on and off throughout Mr. Newhoff's childhood, resulting in several half-siblings of Mr. Newhoff's in the Missoula area and a household without a stable father figure. Doris, a bartender, would leave Mr. Newhoff unsupervised while she worked, or would take Mr. Newhoff to work with her at the bar. Mr. Newhoff first tried alcohol when he was six years old. Mr. Newhoff's mother believes Mr. Newhoff was angry about losing his father at such a young age, and reports the he struggled with – and has been on medication to treat – ADHD since he was a child.

     During his difficult childhood, Mr. Newhoff was the victim of sexual abuse at the hands of his older cousin and physical abuse at the hands of his uncle. Whenever he was in trouble as a youth, his mother would send him to his uncle's

house to pick rocks out of a field and get a beating. With no supervision, alcohol use as a small child, and a history of sexual and physical abuse, it is little wonder Mr. Newhoff's criminal history began at a young age.

Mr. Newhoff began using methamphetamine heavily when he was 15 or 16 years old. At age 15, Mr. Newhoff became the father of twin girls, Breanna and Brittany, with his then 27-year-old girlfriend. Their relationship lasted approximately three years. Up to the time of the instant offense, Mr. Newhoff had minimal contact with his daughters; however, he has written to them both since they were age 9. Since his arrest for the instant offense, Mr. Newhoff has reunited with his daughters. They have both been to visit him in jail and speak with him on the phone regularly, and Mr. Newhoff is anxious to continue building a relationship with his girls. The prospect of spending time with his family has become Mr. Newhoff's focus as this next chapter of his life unfolds.

While in pre-release in Billings in 2016, Mr. Newhoff appeared to finally have things together. He was checking in with his PO regularly, working at Sparks Inc., learning new skills and doing a job he enjoyed. Unfortunately, the stress of work and a tumultuous relationship with a new girlfriend eventually overwhelmed him, and he began using meth again.

Mr. Newhoff has spent almost his entire adult life behind bars.  Although one may argue that Mr. Newhoff has no respect for the law and no one to blame but himself, it is clear that the criminal justice system is failing Mr. Newhoff.  He was abused, ignored, broken down, chemically dependent, incarcerated, and institutionalized at an extremely young age, and the resulting consequence has been an adult life spent behind bars.  Mr. Newhoff is not beyond hope.  He is not an evil or violent person.  This Court should not lock him away and institutionalize him for another decade.  Instead, this Court should impose a sentence that reflects his incredibly difficult and complicated history.  A sentence of 46 months is appropriate.

## IV.  Conclusion

For the foregoing reasons, Mr. Newhoff respectfully requests this Court to impose a sentence of 46 months in prison, followed by three years of supervised release, no fine, and no restitution.  In addition, Mr. Newhoff respectfully requests that his sentence for the instant offense be imposed to run concurrently with his anticipated state sentence(s) in Cause Nos. DC 18-104 and DC-01-335 in the Montana Fourth Judicial District Court.  Lastly, Mr. Newhoff respectfully requests that the Court recommend (1) that he be placed in the federal facility in Sheridan,

Oregon, and (2) that he participate in the Bureau of Prisons' 500-hour Residential Drug Abuse Program.

Respectfully submitted this 6th day of November, 2018.

/s/ Eric Henkel<br>
Eric Henkel<br>
COTNER LAW, PLLC<br>
Attorney for Defendant Newhoff

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2018, a copy of the foregoing document was served on the following persons by the following means.

| | |
|---|---|
| 1- 2 | CM/ECF |
| ____ | Hand Delivery |
| 3 | Mail |
| ____ | Fax |
| ____ | E-Mail |

1. Clerk, United States District Court
2. Cyndee L. Peterson, Assistant U.S. Attorney
3. William Newhoff, Defendant

/s/ Eric Henkel<br>
Eric Henkel<br>
COTNER LAW, PLLC<br>
Attorney for Defendant Newhoff